

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

ENTERED
12/28/2011

| | | |
|---|---|---|
| IN RE: § | | |
| § | CASE NO: 10-50196 | |
| RUBEN VILLARREAL; dba G & R § | CHAPTER 13 | |
| ROOFING, *et al* § | | |
| § | | |
| Debtor(s). § | JUDGE ISGUR | |
| § | | |
| § | | |
| RUBEN VILLARREAL; dba G&R § | | |
| ROOFING, *et al* § | | |
| § | | |
| Plaintiff(s), § | | |
| § | | |
| vs. § | ADVERSARY NO. 11-05001 | |
| § | | |
| MARIA ELENA MORALES, *et al* § | | |
| § | | |
| Defendant(s). § | | |

## MEMORANDUM OPINION

This Memorandum Opinion considers whether the debtors may avoid a prepetition sale of the debtors' homestead, following a prepetition tax foreclosure sale when the tax deed was not recorded prior to the bankruptcy filing. The Court holds that, under the circumstances of this case, the debtor may use § 544(a)(3) to avoid the sale.

### Factual Background[1]

This is an adversary proceeding to set aside a tax foreclosure sale of the Villarreals' homestead, at 4220 Convent in Laredo, Texas.

On August 3, 2010, Webb County conducted a tax foreclosure sale of the Villarreals' homestead. Kish Manwani was the highest bidder at the sale and delivered the purchase price to

---

[1] Unless otherwise followed by a citation to the record, the information in this section comes from the parties' Joint Pretrial Statement, (ECF No. 12).

the Deputy Sheriff conducting the sale. The purchase price of $50,000.00[2] was deposited into the registry of the State District Court, where it remains.

On August 4, 2010, the Villarreals filed for bankruptcy. (Case # 10-50196, ECF No. 1). The Villarreals filed the Chapter 13 case after Manwani paid the foreclosure bid but before a tax deed was prepared, delivered, or filed of record. Manwani filed a Motion for Relief from Stay in order to file the deed. (Case # 10-50196, ECF No. 32). The Court denied the motion on the condition that the Villarreals file this adversary proceeding to determine Manwani's and the Villarreals' respective rights in the property. The Villarreals filed this adversary proceeding on January 14, 2011. On August 25, 2011, the Court held a trial.

## Analysis

The Court holds that the Villarreals may use § 544(a)(3) to avoid the sale of their homestead. The relevant text states:

> The trustee shall have, as of the commencement of the case . . . the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists [and has perfected such transfer].

11 U.S.C. § 544(a)(3). The Fifth Circuit has held that § 522(h) specifically grants debtors standing to use § 544(a)(3) to avoid the foreclosure sale of a homestead. *Realty Portfolio, Inc. v. Hamilton (In re Hamilton)*, 125 F.3d 292, 298 (5th Cir. 1997).

---

[2] Testimony at trial indicated the purchase price was actually $50,200.00.

Although "the Bankruptcy Code creates the status of a hypothetical bona fide purchaser, state law defines that status." *In re Hamilton*, 125 F.3d at 298 (citing *Mutual Benefit Life Ins. Co. v. Pinetree, Ltd. (In re Pinetree, Ltd.)*, 876 F.2d 34, 36 (5th Cir. 1989).

Under Texas law, a "bona fide purchaser is one who acquires (apparent) legal title to property in good faith for a valuable consideration without . . . notice of an infirmity in the title." *In re Hamilton*, 125 F.3d at 298 (quoting *Williams v. Jennings*, 755 S.W.2d 874, 881 (Tex. App.—Houston [14th Dist.] 1988, writ denied)). A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law. TEX. PROP. CODE § 13.001(a).

Under Texas law, a hypothetical purchaser would gain good title to the Villarreals' homestead, after it was purchased by Manwani at the tax foreclosure sale but before Manwani recorded the deed, unless the hypothetical purchaser had notice of the foreclosure purchase. The issue is whether a hypothetical purchaser would be charged with implied knowledge of the foreclosure purchase, by either constructive or inquiry notice. *In re Hamilton*, 125 F.3d at 299. Such knowledge would prevent the hypothetical purchaser from being the bona fide purchaser required by § 544(a)(3).

**Constructive Notice**

Manwani argues a hypothetical purchaser would be charged with implied knowledge of the foreclosure purchase by constructive notice. The Court disagrees.

Under Texas law, constructive notice is notice given by properly recorded instruments and charged to a person as a matter of law, regardless of that person's actual knowledge. *In re Hamilton*, 125 F.3d at 299 (citing *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981)). The

parties agree that no tax deed was filed, prepared, or recorded prior to the bankruptcy filing. (ECF No. 12 at 1). Furthermore, Ms. Morales, the attorney who represents Webb County in delinquent tax cases, testified that nothing in the title records referenced the foreclosure purchase—or even that the property was set to be sold at a tax foreclosure sale. A hypothetical purchaser would not be charged with knowledge of the tax sale by constructive notice.

**Inquiry Notice**

Manwani argues that a hypothetical purchaser would be charged with implied knowledge of the tax sale through inquiry notice. The Court again disagrees.

Texas law recognizes the doctrine of inquiry notice, triggered by knowledge of facts that would put a reasonably prudent person on a duty of inquiry. *In re Hamilton*, 125 F.3d at 299 (citing *Woodward v. Ortiz*, 237 S.W.2d 286 (Tex. 1951)). Inquiry notice may be triggered by facts of which a person has actual or constructive knowledge. *Id.* at 299-300. As § 544(a)(3) considers a hypothetical instead of a real purchaser, there is no "actual knowledge" to consider.

The question is whether our hypothetical purchaser is charged with constructive notice of any facts which would trigger inquiry notice. If inquiry notice is triggered, a purchaser is then imputed with the knowledge of "those things which a reasonably diligent inquiry and exercise of the means of information would have discovered." *In re Hamilton*, 125 F.3d at 300. For example, constructive notice of a deed of trust recorded in the chain of title places a hypothetical purchaser on inquiry notice. *In re Hamilton*, 125 F.3d at 300. Courts have implied knowledge of a foreclosure sale under a deed of trust, in the absence of a recorded substitute trustee's deed, where a reasonably diligent inquiry would have led to discovery of the foreclosure sale. *Id.* (citing *Clarkson v. Ruiz*, 140 S.W.2d 206, 210 (Tex. Civ. App.—San Antonio 1940, writ dism'd)).

Manwani argues that inquiry notice is triggered because a hypothetical purchaser would have had constructive notice of the ongoing tax lawsuit involving the Villarreals' homestead. Evidence indicated that searching the name "Villarreal" in the state district court records would have uncovered the ongoing tax lawsuit regarding the property. Essentially, the argument is that, like properly recorded instruments, a hypothetical purchaser has constructive notice of ongoing legal proceedings as they are publicly filed records.[3] The Court disagrees.

In *Prewitt v. United States*, the Fifth Circuit faced a similar question. 792 F.2d 1353 (5th Cir. 1986). The issue was whether a tax lien filed against a former husband after a divorce decree became final, but before the decree was properly recorded in the county deed records, had priority over an intervening purchaser who purchased the same property from the wife. (*Id.*). Johanna Damon divorced her husband, James Damon, who was in jail for tax violations. (*Id.*). The divorce decree, which transferred all of James's interest in the couple's community property to his wife Johanna, was filed in the court records of the Travis County District Clerk's Office and noted on the docket sheet. (*Id.* at 1354). It was not, however, filed in the Travis County deed records until after the IRS levied against the property for civil penalties relating to James's tax fraud. (*Id.*). Like Manwani in this case, the intervening purchaser argued that the IRS had constructive notice of the property transfer because the divorce decree was filed in the state

---

[3] At trial, Manwani also argued that a hypothetical purchaser has constructive notice of newspaper notices and court-house postings referencing the tax foreclosure sale. Constructive notice that the property was set for a tax sale would presumably trigger a duty of inquiry. Ms. Morales did testify that public notices of the upcoming sale were thrice placed in the local paper and that a bulletin was posted at the courthouse. The Court disagrees with Manwani that a hypothetical purchaser has constructive notice of these items. *See Allen v. Devon Energy Holdings, L.L.C.*, 2011 Tex. App. LEXIS 5854 (Tex. App.—Houston July 28, 2011) (rejecting defendants' argument to extend constructive notice doctrine to out-of-town newspaper articles and information available on the internet when plaintiffs were not charged with constructive knowledge of information contained in publicly filed records). Although *Allen* dealt with a limitations inquiry, the point remains valid and applicable: there is no justification for charging the plaintiffs with constructive knowledge of newspaper notices and a court-house bulletin while not charging plaintiffs with constructive knowledge of information in publicly filed records. Additionally, as in *Allen*, defendants cite no Texas cases supporting this interpretation of the constructive knowledge doctrine.

district court records.[4] The Fifth Circuit found that the IRS did not have constructive notice of the information contained in the state district court records. (*Id.*).

Importantly, the Fifth Circuit stated that "the common law notion of constructive notice of ongoing proceedings" had been superseded in Texas by the lis pendens statutes. (*Id.*).[5] The Fifth Circuit found that the IRS did not have constructive notice of the transfer of property by the divorce decree—despite the fact that the IRS would have uncovered the filed divorce decree by searching the state district court records. Similarly, our hypothetical purchaser is not charged with constructive notice of all ongoing legal proceedings just because they are matters of public record.

The evidence shows no facts, of which a hypothetical purchaser would have constructive knowledge, that would trigger inquiry notice. Ms. Morales testified that no lis pendens was filed in the real estate records. As discussed above, a hypothetical purchaser is not charged with constructive notice of the ongoing tax lawsuit between Webb County and the Villarreals. As inquiry notice was not triggered,[6] the Court need not determine whether the foreclosure purchase would have been uncovered through a reasonably diligent inquiry.

---

[4] Manwani's argument actually requires one additional step. In *Prewitt*, the divorce decree filed in the district court records noted the property transfer from husband to wife. The district court records in this case indicate only an ongoing tax lawsuit and that the property was set for a tax foreclosure sale—not that the property was actually sold. (Def.'s Trial Ex. 1). Even after establishing constructive knowledge of the tax lawsuit, Manwani would have to argue that this triggers inquiry notice and that a reasonably diligent inquiry would have uncovered the foreclosure purchase.

[5] Dictum in a later Texas Supreme Court case concurs with the Fifth Circuit, at least as to the result in *Prewitt*. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 887 n.1 (Tex. 1998) ("To the extent that *Shivers*[, 965 S.W.2d 727 (Tex. App.—Texarkana 1998, writ denied)] could be read as indicating that all Railroad Commission records are constructive notice, as distinguished from discoverable for discovery rule purposes, simply because they are a matter of public record . . . we disagree.").

[6] Manwani argued that a desire to purchase real property is by itself enough to trigger inquiry notice. This is incorrect. *See in re Hamilton*, 125 F.3d at 299 ("Texas law recognizes the doctrine of inquiry notice, *triggered by notice of facts* that would put a reasonably prudent person on a duty of inquiry.") (emphasis added) (citing *Woodward v. Ortiz*, 150 Tex. 75, 237 S.W.2d 286, 289 (1951)).

For the sake of completeness, the Court will analyze which facts would have been uncovered through a reasonably diligent inquiry—in other words, which facts would be imputed to the hypothetical purchaser if inquiry notice were triggered.

The background scenario is as follows: a hypothetical purchaser knows of an ongoing tax lawsuit regarding property he wishes to purchase. The hypothetical purchaser also knows that the property is scheduled for a tax sale. Nothing in either the title records or the state district court records indicates whether the property was actually sold at the tax foreclosure sale. The question is whether, through a reasonably diligent inquiry, the hypothetical purchaser would discover that the property had, in fact, been sold at the tax sale. The only evidence put before the Court indicated that a reasonably diligent inquiry would not have uncovered this fact.

Neither party ever explicitly stated to the Court what they believed a reasonably diligent inquiry would be under the circumstances. Manwani testified about how he does his due diligence when researching property. In addition, Ms. Morales was questioned as to the steps someone would need to take to figure out whether a property set to be sold at a tax sale had actually been sold. This is the only evidence before the Court that could be construed as indicating what a reasonably diligent inquiry might consist of—and what facts such an inquiry might uncover.

Manwani testified in detail about his process for researching property, a major aspect of which is hiring a title company to investigate. This investigation includes researching possible tax liens and searching the district court records—not merely searching the title records. The testimony indicated that, although Manwani only pays $5.00 for this service because of a personal relationship, the normal fee for such a service would be $200.00. The Court accepts the

argument that, once inquiry notice is triggered, paying for this service may be part of a reasonably diligent inquiry. The question is what facts this diligent inquiry would uncover.

The title company would surely have discovered the ongoing tax lawsuit and the fact that the property was set for foreclosure sale—but the hypothetical purchaser already knows this. There is no evidence indicating the title company would have taken the additional step and learned that the property had actually been sold at the tax sale. Therefore, although hiring a title company might be part of a reasonably diligent inquiry, it would not have uncovered the critical fact.

Ms. Morales's testimony was the only evidence as to how anyone could have learned the property had been sold at a foreclosure sale. Ms. Morales testified that someone wanting this information could have telephoned her office. Ms. Morales would not have given out the information herself, but would have directed the person to call the Sheriff's office. When asked whether the Sheriff's office would have given out this information, Ms. Morales replied: "Sales are not secret." The Court interpreted this to mean that the Sheriff's office would have told someone whether the property had sold. Therefore, through this series of telephone calls a person could have discovered that the property had been sold at the foreclosure sale. The question therefore becomes whether a reasonably diligent inquiry would include making this series of telephone calls.

The evidence put before the Court indicates that a reasonably diligent inquiry would not include making this series of telephone calls. Manwani, when describing his due diligence procedures, did not mention what he would do if his research indicated that a property he desired had been set for a tax sale, but the title records didn't contain a filed tax deed. Phone calls to Ms. Morales were not part of Manwani's normal procedure. Ms. Morales testified that in her seven

years of working for Webb County in this area she never once received a telephone call about whether a property posted for a tax foreclosure sale had in fact sold. There is no evidence as to how many actual prospective purchasers over these seven years were in a situation where such a call to Ms. Morales was necessary. Ms. Morales handles all of the tax sales for Webb County. The fact that no prospective purchaser has ever called Ms. Morales is evidence that this series of phone calls would not necessarily be part of a reasonably diligent inquiry under the circumstances. The Court finds that a reasonably diligent inquiry would not have uncovered the fact that the property had been sold at the tax foreclosure sale.

Manwani was not helpless. After unexpectedly not receiving the tax deed the same day as the tax sale, Manwani could still have recorded a notice of his purchase in the real property records if he wished to protect himself against an intervening bona fide purchaser. In addition, unlike the intervening purchaser in *Prewitt*, Manwani's $50,200 purchase price remains intact.

A hypothetical purchaser would not be charged with the implied knowledge of the foreclosure purchase, through either constructive or inquiry notice. The hypothetical purchaser qualifies as a bona fide purchaser. The tax sale should be avoided.

## Conclusion

The Court will issue a judgment in accordance with this Memorandum Opinion.

SIGNED **December 28, 2011.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE